

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD84462 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | December 13, 2022 |
| JARRAD RYAN VANDERGRIFT, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Callaway County, Missouri**
The Honorable Jeff Harris, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge,
Anthony Rex Gabbert, Judge

Jarrad Ryan Vandergrift ("Vandergrift") appeals following his conviction of three counts of child molestation in the first degree and three counts of statutory sodomy in the first degree. This case presents with an unusual procedural background that requires us to *sua sponte* address whether Vandergrift's appeal was timely, whether a written judgment of conviction in the proper form has been entered of record, and whether our resolution of either issue impacts our appellate jurisdiction. After addressing these issues, we conclude

that Vandergrift's right of appeal pursuant to Rule 30.01(a)[1] upon the rendition of final judgment was triggered when the trial court orally rendered judgment and imposed sentence in his presence as required by Rule 29.07(b)[2]; that Vandergrift's appeal was timely filed within ten days of this date, invoking our appellate jurisdiction; that a written judgment of conviction satisfying the requirements of Rule 29.07(c) was entered of record, though not until nearly eight months after the rendition of final judgment; and that the tardy preparation and entry in the record of Vandergrift's Rule 29.07(c) judgment of conviction does not divest us of appellate jurisdiction.

On the merits, we reject Vandergrift's contentions that the trial court abused its discretion when it rejected his amended motion for new trial and committed plain error when it *sua sponte* failed to exclude expert witness testimony.

Given our conclusions, we would ordinarily affirm the trial court's judgment. However, as our Opinion explains, determining when the rendition of final judgment occurs as to trigger the right of appeal pursuant to Rule 30.01(a), and whether a written Rule 29.07(c) judgment of conviction must be entered of record to invoke appellate jurisdiction, are issues of general and statewide interest, and of substantial importance. Our Opinion reveals peculiarities in the Rules of Criminal Procedure that may be fostering uncertainty on these subjects. And our Opinion explains how holdings in Missouri cases, including Missouri Supreme Court cases, are in seeming tension with one another, or with the plain meaning of terms employed in the Rules of Criminal Procedure. Ultimately,

---

[1]All rule references are to *Missouri Court Rules, Volume I -- State, 2021* unless otherwise noted.
[2]Rule 29.07 was amended, effective July 1, 2022. The amendments to the Rule have no impact on the substantive analysis in this Opinion.

2

guidance on the important procedural and jurisdictional issues addressed in this Opinion should come from the Missouri Supreme Court. Therefore, we do not finally decide Vandergrift's appeal, and instead order this appeal be transferred to the Missouri Supreme Court for final disposition pursuant to Rule 83.02.

## I.

### Procedural History Relevant to Determining Appellate Jurisdiction

The State charged Vandergrift with three counts of child molestation in the first degree in violation of section 566.067[3] and three counts of statutory sodomy in the first degree in violation of section 566.062.[4] Following a three-day jury trial, the jury entered verdicts finding Vandergrift guilty on all counts on February 3, 2021.

As required by Rules 29.07(b)(1) and (2), Vandergrift appeared on April 7, 2021, for a hearing on his post-trial motions, and for the rendition of judgment and sentencing. The post-trial motions were denied. Following allocution, the trial court orally rendered judgment on each count consistent with the jury's verdicts, and imposed sentences of fifteen years for each count of child molestation, and of thirty years for each count of statutory sodomy, with each sentence running consecutively, resulting in sentences totaling 135 years. Vandergrift was then advised of his appellate rights as required by Rule 29.07(b)(3).

---

[3]All references to section 566.067 are to RSMo 2000 as supplemented through the dates the acts of child molestation were alleged to have occurred (on or about March 8, 2009, through on or about November 11, 2011) unless otherwise indicated. Section 566.067 was not amended during this time frame.

All other statutory references are to RSMo 2016 as supplemented through April 7, 2021, the date of sentencing, unless otherwise indicated.

[4]All references to section 566.062 are RSMo 2000 as supplemented through the dates the acts of statutory sodomy were alleged to have occurred (Count IV was alleged to have taken place on or about March 8, 2010, through on or about March 7, 2012; Counts V and VI were alleged to have taken place on or about August 1, 2018, to on or about December 31, 2018) unless otherwise indicated. While section 566.062 was amended effective January 1, 2017, the amendment to section 566.062 does not affect our resolution of this appeal.

3

Vandergrift filed a notice of appeal in the Circuit Court of Callaway County on April 14, 2021. Vandergrift used Form No. 8-A(3), the form promulgated by the Supreme Court of Missouri for use in filing a notice of appeal in a criminal case. In the field requiring insertion of the date of the judgment, Vandergrift stated "April 7th, 2021." To respond to the form's direction to attach a copy of the judgment appealed from, Vandergrift attached two April 7, 2021 docket entries reflected on Case.net.[5] The docket entries reflect the trial court's denial of Vandergrift's post-trial motions and the sentences imposed on each count of which Vandergrift was convicted. The docket entries do not identify the crimes of which Vandergrift was convicted.

The Callaway County circuit clerk forwarded Vandergrift's Form No. 8-A(3) notice of appeal to this court on April 15, 2021. The document forwarded from the circuit clerk did not attach the April 7, 2021 docket entries, and instead attached a "form" designated as "Judgment" that had been completed by the clerk's office to reflect, among other things, the specific crimes of which Vandergrift had been convicted, and the substance of the sentences orally imposed by the trial court on April 7, 2021 ("April 2021 judgment form"). At the bottom of the last page, the April 2021 judgment form recites "**So Ordered on: 19CW-CR00770-01   ST V JARRAD RYAN VANDERGRIFT**." The form's fields permitting insertion of the date of the judgment and the trial judge's signature were completed with typewritten entries of "4/15/2021" (one day after Vandergrift filed his notice of appeal) and "Judge Harris." The form's fields permitting insertion of the date and

---

[5]"Case.net is an electronic display of court information provided for the convenience of litigants and the public." *McGuire v. Edwards*, 571 S.W.3d 661, 670 (Mo. App. E.D. 2019) (citing *Johnson v. McCullough*, 306 S.W.3d 551, 559 n.4 (Mo. banc 2010)).

4

a signature for certification by the clerk "that the above is a true copy of the original Judgment and Sentence of the court in the above cause, as it appears on record in my office" were completed by typewritten entries of "4/15/2021" and "/s/ Kanesha Boone."

Vandergrift filed a system-generated legal file in this court on December 2, 2021, as required by Rule 30.04(b) and Rule 81.12(b)(1). The system-generated legal file includes a docket sheet from the underlying proceedings. The docket sheet reflects an entry for the notice of appeal Vandergrift filed in the circuit court on April 14, 2021, with the April 7, 2021 docket entries attached. The docket sheet *does not* include an entry for the April 2021 judgment form the circuit clerk submitted to this court with Vandergrift's notice of appeal. The April 2021 judgment form is not included in the system-generated legal file because it was never entered of record in the trial court.

The docket sheet in the system-generated legal file does reflect, however, an entry dated December 2, 2021, designated as "Sentence and Judgment." The document associated with this entry is also a "form" designated as "Judgment" ("December 2021 judgment form") and is included in the system-generated legal file. The December 2021 judgment form is substantively identical to the April 2021 judgment form *except* the fields at the bottom of the form for the date of the judgment and for the trial judge's signature are blank, and the fields for the circuit clerk's certification that the form is "a true copy of the original Judgment and Sentence of the court" are dated "12/2/21" and reflect the typewritten name of "Michelle Smith."

## II.

## Appellate Jurisdiction

The steps taken in this case by the circuit clerk to enter Vandergrift's judgment of conviction in the record require us to address whether a written judgment of conviction in the proper form has ever been entered in the record in this case; whether a written judgment of conviction in the proper form is required to be entered in the record to invoke appellate jurisdiction; and whether a criminal defendant's right to appeal is triggered by the entry of a written judgment of conviction in the proper form or instead by the oral rendition of judgment and imposition of sentence in the defendant's presence required by Rule 29.07(b). We have an obligation to determine, acting *sua sponte* when necessary, whether we have jurisdiction to entertain an appeal. *State v. Johnson*, 617 S.W.3d 439, 443 (Mo. banc 2021).

For the reasons herein explained, we conclude that the Rules of Criminal Procedure which took effect on January 1, 1980, provide in Rule 30.01(a) that the right of appeal in a criminal case is triggered upon the rendition of final judgment; that *when a criminal defendant has been convicted*, the rendition of final judgment occurs upon the oral rendition of judgment and imposition of sentence in the defendant's presence as required by Rule 29.07(b); that when a criminal defendant has been convicted, a notice of appeal must be filed within ten days of the oral rendition of judgment and imposition of sentence; that section 546.590 requires the clerk to enter a written judgment of conviction in the record that comports with Rule 29.07(c), but the entry of a written judgment of conviction is a ministerial act and not the judicial act of rendering judgment that triggers the right of appeal; and that although inclusion of a Rule 29.07(c) judgment of conviction in an

6

appellant's legal file is required by Rule 30.04(b), its absence, even if explained by the circuit clerk's failure to enter a Rule 29.07(c) judgment of conviction in the record, does not deprive a court of appellate jurisdiction, but could support dismissal of an appeal on procedural grounds pursuant to Rule 30.14.

## A.

***The right of appeal in a criminal case commences on "the rendition of final judgment," a phrase that is not defined by the Rules of Criminal Procedure***

The right to appeal is purely statutory. *State v. Waters*, 597 S.W.3d 185, 186 (Mo. banc 2020). Section 547.070 sets forth the right to appeal final judgments in criminal cases:

> In all cases of ***final judgment rendered*** upon any indictment or information, an appeal to the proper appellate court shall be allowed to the defendant, provided, defendant or his attorney of record shall during the term at which the judgment is rendered file his written application for such appeal.

(Emphasis added.) This statutory right of appeal is also set forth in Rule 30.01(a), which provides: "***After rendition of final judgment*** in a criminal case, every party[6] shall be entitled to any appeal permitted by law. Appeals may be taken as provided in Rule 81.04 and Rule 81.08." (Emphasis added.) Pursuant to Rule 81.04, the appeal permitted by Rule 30.01(a) must be filed within ten days of rendition of final judgment.

Neither section 547.070 nor Rule 30.01(a) define "rendition of final judgment." Ascribing the intended definition to this phrase is a surprisingly complicated undertaking,

---

[6]Rule 30.01(a) thus addresses not only the defendant's right to appeal in a criminal case, but as well the state's right to appeal. The statutory authority for the state to file an appeal in a criminal case is addressed in section 547.200, and addresses both interlocutory appeals and the limited right of appeal from final dispositions in criminal cases. Rule 30.02 also addresses the State's right to file interlocutory appeals in criminal cases.

This Opinion addresses only the right of appeal from the rendition of a final judgment in a criminal case that results in the conviction of a criminal defendant. Appeals taken by the state, whether from interlocutory orders or from final judgments, are beyond the scope of this Opinion.

7

as we explain, *infra*. Yet, certainty as to when a final judgment is rendered in a criminal case is essential. An authorized appeal in a criminal matter must be filed within ten days ***after*** the "rendition of final judgment." Rule 30.01(a); Rule 81.04(a); Rule 30.03. The Rules of Criminal Procedure do not authorize prematurely filed appeals, requiring the dismissal of any appeal filed before the "rendition of a final judgment." *But see* Rule 81.05(b) (authorizing premature appeals in civil cases). And, if a timely notice of appeal is not filed with the clerk of the trial court, a party may seek leave to late file an appeal, but must do so "within twelve months after the judgment becomes final," a timeframe that cannot be extended. Rule 30.03; *see Gehrke v. State*, 280 S.W.3d 54, 58 (Mo. banc 2009); *State v. Welch*, 865 S.W.2d 434, 435 (Mo. App. E.D. 1993). The combined effect of these Rules can impose great hardship if an appeal is dismissed because it is premature or not timely filed, should dismissal occur after the time to seek leave to late file an appeal has expired.

**B.**

***Though the term "final judgment" in a criminal case has been defined by our Supreme Court, our Supreme Court has not meaningfully analyzed the 1980 amendments to the Rules of Criminal Procedure to determine when a final judgment in a criminal case is "rendered" as to trigger the right of appeal following a criminal conviction***

Though the phrase "final judgment" is not defined in section 547.070 or Rule 30.01(a), our Supreme Court has resolved this issue. "A judgment in a criminal case is final 'if the judgment disposes of all disputed issues in the case and leaves nothing for future adjudication.'" *Waters*, 597 S.W.3d at 187 (quoting *State v. Smiley*, 478 S.W.3d 411, 415

8

(Mo. banc 2016)). "Most often, the question of finality in a criminal case is determined by whether a sentence has been imposed."[7] *Id.*

A "final judgment" in a criminal case is eligible for appeal immediately ***after*** its "rendition." Rule 30.01(a). As noted, section 547.070 and Rule 30.01(a) do not define "rendition." Subsequent to the amendment of the Rules of Criminal Procedure effective January 1, 1980, our Supreme Court has not expressly addressed the intended meaning of this term. Though our Supreme Court definitively held in *Waters* that a criminal judgment is final when it disposes of all issues, and that this ordinarily happens when sentence is imposed, *Waters* did not discuss when the judicial act of imposing sentence occurs, and thus did not discuss when the "rendition of final judgment" occurs as to trigger the right of appeal pursuant to Rule 30.01(a).

Though our Supreme Court has not expressly addressed this important question following the 1980 amendments to the Rules of Criminal Procedure, the holdings in a handful of intermediate appellate decisions since that date have the practical effect of equating the phrase "rendition of final judgment" in Rule 30.01(a) with entry in the record of a written Rule 29.07(c) judgment of conviction. *See, e.g.*, *State v. Paul*, 401 S.W.3d 591, 592-93 (Mo. App. W.D. 2013); *State v. Fisher*, 165 S.W.3d 498, 498 (Mo. App. E.D. 2005); *State v. Nenninger*, 50 S.W.3d 368, 369 (Mo. App. S.D. 2001); *State v. Jansen*, 21 S.W.3d 86, 87 (Mo. App. S.D. 2000); *State v. Weber*, 989 S.W.2d 256, 257 (Mo. App. S.D. 1999). For reasons herein explained, we do not agree that the "rendition of final judgment"

---

[7]Not all final judgments in criminal cases end in conviction. The notion that finality occurs upon the imposition of sentence plainly applies only where a criminal defendant has been convicted. As explained, *supra* note 6, this Opinion addresses only a criminal defendant's right of appeal following conviction.

9

referred to in Rule 30.01(a) is intended to mean the entry of a Rule 29.07(c) judgment of conviction.

Rule 29.07(c) was first adopted effective January 1, 1980. The Rule describes what must be "set forth" in a judgment of conviction as follows: "A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence."[8] Prior to January 1, 1980, the only provision in the Rules of Criminal Procedure describing the required contents of a judgment of conviction was Rule 27.11, which provided that "[w]henever a judgment upon a conviction shall be rendered in any court, the clerk of such court shall enter such judgment and sentence thereon fully on the minutes, *stating briefly the offense for which such conviction shall have been had . . . .*" (Emphasis added.) Rule 27.11, which plainly differentiated between the "rendering" of judgment and the later "entry" of judgment, was consistent with section 546.590, which similarly provided:

> Whenever a judgment upon a conviction shall be rendered in any court, the clerk of such court shall enter a judgment fully on the minutes, stating briefly the offense for which such conviction shall have been had, and the court shall inspect such entries and conform them to the facts; but omission of the duty, either by the clerk or judge, shall in nowise affect or impair the validity of the judgment.

The pre-1980 version of Rule 27.11 was repealed by the 1980 amendments to the Rules of Criminal Procedure, and instead Rule 29.07(c) was adopted. Though Rule 29.07(c) addresses only the required content of a judgment of conviction, and not the steps required to be taken for its preparation, section 546.590 remains in effect and continues to

---

[8]Rule 29.07(c) goes on to provide that "[i]f the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly." Judgments reflecting discharge or acquittal are beyond the scope of this Opinion.

10

address those steps. Thus, as of January 1, 1980, Rule 29.07(c) and section 546.590 combine to describe all that must be "set forth"[9] in a judgment of conviction; to require the clerk of the court to *enter* a judgment of conviction in the record that complies with the content requirements of Rule 29.07(c) *after* judgment has been *rendered* by the trial court; and to require the trial court to confirm that the judgment of conviction entered by the clerk in the record conforms with the judgment rendered by the trial court.

Neither Rule 29.07(c) nor Rule 30.01(a) express an intent to treat the "rendition of final judgment" referred to in Rule 30.01(a) as the functional equivalent of entry of a Rule 29.07(c) judgment of conviction in the record. And, section 546.590 still plainly differentiates between the rendering of judgment by the trial court, and the clerk's later entry of a written judgment that conforms with the rendered judgment. Yet, without discussing Rule 30.01(a), section 546.590, or the intended meaning of the word "rendition" used in both, *Paul*, *Fisher*, *Nenninger*, *Jansen*, and *Weber* nonetheless concluded that if the appellate record does not include a Rule 29.07(c) judgment of conviction or establish that one was ever entered, the defendant's right to appeal *has not been triggered*, requiring dismissal of the appeal *for want of appellate jurisdiction*. *Paul*, 401 S.W.3d at 593 (holding that because "the trial court failed to enter a final judgment complying with the requirements of Rule 29.07(c) . . . . we have no jurisdiction to entertain Paul's appeal");

---

[9]Although Rule 29.07(c) does not state that a judgment of conviction must be in writing, it does use the phrase "set forth," a phrase that is consistent with section 546.590's requirement that the clerk enter the judgment rendered by the trial court "fully on the minutes." Interpreting Rule 29.07(c) to require a written judgment of conviction is also consistent with Rule 30.04(b), which instructs that the legal file in a criminal appeal must include "the judgment and sentence," a requirement that cannot be satisfied unless the judgment and sentence is a written document entered of record. Finally, construing Rule 29.07(c) to require a judgment of conviction to be in writing is consistent with Supreme Court Operating Rule 4.12(2), which provides that "[a] written record of the judgment is required in . . . criminal cases."

11

*Fisher*, 165 S.W.3d at 498 (holding that because a document meeting the requirements of Rule 29.07(c) did not appear of record, there was no final appealable judgment, requiring dismissal of the appeal); *Nenninger*, 50 S.W.3d at 369 (holding that a docket entry that indicated the jury found Nenninger guilty, that the trial court denied the motion or new trial, and that the trial court imposed punishment did not comply with Rule 29.07(e) so that the docket entry was not a rendition of final judgment from which an appeal could be taken); *Jansen*, 21 S.W.3d at 87 (holding that although docket sheet showed "a rendition of judgment," appeal had to be dismissed because "no judgment of conviction was thereafter filed"*)*; *Weber*, 989 S.W.2d at 257 (holding that although judgment was rendered as reflected on docket sheet, no Rule 29.07(c) judgment of conviction was filed requiring dismissal of appeal). The holdings in these cases effectively treated the criminal defendant's appeal as an unauthorized premature appeal, and necessarily suggest (without so stating) that a Rule 29.07(c) judgment of conviction could be entered in the record *after* dismissal of the appeal, permitting the criminal defendant to then refile a notice of appeal, even though oral rendition of judgment and imposition of sentence in the defendant's presence would have occurred many months, if not years, prior.

12

We question the holdings in *Paul*,[10] *Fisher*, *Nenninger*, *Jansen*, and *Weber*[11] for several reasons.

## C.

***Rule 29.07(b), Rule 29.11(c), and section 546.590, cannot be reconciled with equating the "rendition of final judgment" following conviction with entry of a written Rule 29.07(c) judgment of conviction***

Equating the entry of a Rule 29.07(c) judgment of conviction with the "rendition of final judgment" for purposes of triggering a criminal defendant's right of appeal under Rule 30.01(a) cannot be reconciled with Rule 29.07(b), Rule 29.11(c), or section 546.590. Rule 29.07(b) addresses allocution and the imposition of sentence, and the required presence of the defendant, and provides, in pertinent part:

> (1) *Allocution and Imposition of Sentence*. Sentence shall be ***imposed*** without unreasonable delay. When the defendant appears for judgment and sentence, he must be informed by the court of the verdict or finding and asked whether he has any legal cause to show why judgment and sentence should not be pronounced against him; and if no sufficient cause be shown, the ***court shall render the proper judgment and pronounce sentence thereon***. . . .
>
> (2) *Presence of Defendant*. If the defendant has been convicted of a felony, he must be personally present when sentence and judgment are pronounced. . . .

(Emphasis in bold italics added.) Rule 29.11(c) provides:

> ***No judgment shall be rendered until*** the time for filing a motion for new trial has expired and if such motion is filed, until it has been determined. If

---

[10]It has been this Court's clerk's office's consistent practice, both before and after *Paul* was decided, to calculate the timeliness of a criminal defendant's notice of appeal from the point of oral rendition of the judgment and imposition of sentence, and not from the date of entry of a written Rule 29.07(c) judgment of conviction. Ordinarily, these dates are the same (as they should be) or are minimally separated in time. But where, as in this case, a substantial amount of time has inexplicably transpired between the oral rendition of judgment and imposition of sentence, and the entry in the record of a written 29.07(c) judgment of conviction, confusion about when an appeal must be filed in order to be timely is the natural result.

[11]We have not conducted an exhaustive review to ensure that every intermediate appellate case with similar holdings has been identified.

13

a motion for new trial is not filed or if one is filed and overruled, ***judgment shall be rendered without unreasonable delay***.

(Emphasis added.) These Rules explain when the imposition of sentence occurs, an important observation as a judgment resolving all charges filed against a criminal defendant becomes final ***when sentence is imposed***. *See Waters*, 597 S.W.3d at 187 (holding that "the question of finality in a criminal case is determined by whether a sentence has been imposed"). Even more importantly, these Rules use the term "rendered" in referring to the judgment in a criminal case following conviction, aligning with a derivative of the same term used in Rule 30.01(a) to describe when the right of appeal is triggered.

Read together, the plain language of Rules 29.07(b), 29.11(c), and 30.01(a) express an intent that the "rendition of final judgment" which triggers the right of appeal for a criminal defendant following conviction occurs upon the oral rendering of judgment and imposition of sentence in the presence of the defendant required by Rule 29.07(b). So construed, a criminal defendant's time to file a notice of appeal commences upon the oral rendition of judgment and imposition of sentence contemplated by Rule 29.07(b)(1), and not when a written Rule 29.07(c) judgment of conviction is later entered of record by a clerk of the court. This construction is consistent with Rule 29.07(b)(3), which requires a trial court "[a]fter imposing a sentence in a case which has gone to trial on a plea of not guilty" to "advise the defendant of his right to appeal." And, this construction is wholly consistent with section 546.590, which explicitly distinguishes between the ***rendition*** of a judgment of conviction by the trial court and the clerk's later ***entry*** of judgment on the

14

record when it provides that "[w]henever a judgment upon a conviction shall be rendered in any court, the clerk of such court shall enter a judgment fully on the minutes."

**D.**

***The commonly accepted meanings of "rendition" and "enter" when referring to a judgment are distinct, and support differentiating between the rendition of final judgment for purposes of triggering a criminal defendant's right of appeal under Rule 30.01(a) and the later entry of a Rule 29.07(c) judgment of conviction***

Differentiating between the "rendition of final judgment" as contemplated by Rule 30.01(a) and as described in Rule 29.07(b), and the later "entry" of a written judgment of conviction as required by Rule 29.07(c) and section 546.590, is also consistent with the established and accepted meanings of "rendition" and "entry" of judgments.

> "The rendition of the judgment is the judicial act upon which the execution rests, its entry upon the record is a mere ministerial act evidencing the judicial act, but not essential to its validity, or giving to the judgment any additional force or efficacy. A valid judgment rendered will support and validate an execution issued in conformity therewith, although the formal record evidence of its rendition may not have been in existence at the time the execution issued. It is sufficient if the record evidence is in existence when proof of the judgment becomes necessary."

*Ex parte Mitts*, 278 S.W. 1047, 1048 (Mo. App. 1926) (quoting *Fontaine v. Hudson*, 5 S.W. 692, 694 (Mo. 1887)). The same was held in *Lieffring v. Birt*, 204 S.W.2d 935 (Mo. 1947), in which our Supreme Court determined that "[a] judgment is the judicial act of the court and its entry upon the record is the ministerial act of the clerk and in legal contemplation, . . . the judgment is *rendered* upon the verdict when the verdict is returned, and its validity is not affected by the delay of the clerk in *entering* it on the court record, or by an omission altogether to record it in pursuance of statutory direction." *Id.* at 937; *see also Rehm v. Fishman*, 395 S.W.2d 251, 255 (Mo. App. 1965) (holding that "the

15

rendition of a judgment is to be distinguished from its entry in the records," and that "[a] judgment is the judicial act of the Court and its entry upon the record is the ministerial act of the Clerk").  *Black's Law Dictionary* has similarly differentiated between "rendition of judgment" and "entering judgments," in pertinent part, as follows:

> **Entering judgments**.  . . . The entering of a judgment is a ministerial act performed by the clerk of court by means of which permanent evidence of judicial act in rendering judgment is made a record of the court. . . .
>
> . . . .
> Entry of judgment differs from rendition of judgment.  "Rendition" of a judgment is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy.  The "entry" is a ministerial act, which consists in entering upon the record a statement of the final conclusion reached by the court in the matter, thus furnishing external and incontestable evidence of the sentence given, and designed to stand as a perpetual memorial of its action.
>
> . . . .
>
> **Rendition of judgment**.  Rendition of a judgment is effected when trial court in open court declares the decision of the law upon the matters at issue, and it is distinguishable from "entry of judgment," which is a purely ministerial act by which judgment is made of record and preserved.  ***A judgment is rendered as of date on which trial judge declares in open court his decision on matters submitted to him for adjudication, and oral pronouncement by the court of its decision is sufficient for "rendition of judgment"*** . . . .

BLACK'S LAW DICTIONARY 531, 1296 (6th ed. 1990) (emphasis added) (citations omitted).[12]

When interpreting Supreme Court Rules, we are instructed to give the words used their plain and ordinary meaning, unless an intent to do otherwise is expressed.  *In re Hess*,

---

[12]*Black's Law Dictionary* has been revised multiple times since 1990.  The most recent edition, published in 2019, no longer defines the phrases "entering judgments" and "rendition of judgment" but instead defines the terms "enter," "rendition," and "judgment" separately in a manner that is consistent with its definition of the phrases in 1990.

406 S.W.3d 37, 43 (Mo. banc 2013) (holding that the Supreme Court's intent "is determined by considering the plain and ordinary meaning of the words in the Rule"). The Rules of Criminal Procedure in effect since January 1, 1980, do not authorize this court to disregard the plain, ordinary, and distinct meanings of the terms "rendition" and "entry" when referring to judgments of conviction.

In sharp contrast, Rule 74.01(a) in the Rules of Civil Procedure plainly expresses an intent to disregard the common meanings of "rendition" and "entry" of judgment by collapsing these otherwise distinct legal concepts. Rule 74.01(a) provides, in pertinent part, that "[a] judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." Of course, the Rules of Civil Procedure do not apply to criminal proceedings, ***unless expressly noted to the contrary*** (a caveat that is quite relevant to our analysis, as we explain, *infra*). *See* Rule 19.06 ("Rules 19 to 36, inclusive, shall govern all criminal proceedings . . . ."); Rule 41.01 (addressing the application of Rules 41 through 101 with no reference to criminal proceedings); *Cf. City of St. Peters v. Hodak*, 125 S.W.3d 892, 895 (Mo. App. E.D. 2004) (holding that Rule 74.01 "is a civil rule" that does not apply "to the quasi-criminal proceedings in municipal court").

Because there is no analog for Rule 74.01(a) in the Rules of Criminal Procedure, nor any other expression of intent supporting departure from the commonly accepted, distinct meanings of "rendition" and "entry" when referring to judgments of conviction, we conclude that the "rendition of final judgment" referred to in Rule 30.01(a) is not the equivalent of entry of a Rule 29.07(c) judgment of conviction. Instead, the former refers

17

to the oral rendition of judgment and imposition of sentence in the presence of a defendant required by Rule 29.07(b), and the latter refers to the ministerial duties of the clerk and trial court to document the trial court's rendered judgment on the record as required by Rule 29.07(c) and section 546.590. This conclusion is consistent with the fact that the clerk's or trial court's omission to perform the ministerial duties described in section 546.590 "***shall in nowise affect or impair the validity of the judgment***." (Emphasis added.)

**E.**

***Cases decided before January 1, 1980, cannot be relied on to determine the meaning of "rendition of final judgment" in Rule 30.01(a) because of material changes to the Rules of Criminal Procedure that took effect on that date***

The holdings in *Paul*, *Fisher*, *Nenninger*, *Jansen*, and *Weber* failed to account for the 1980 amendments to the Rules of Criminal Procedure, and thus failed to appreciate that the 1980 amendments effectively abrogated pre-1980 decisions that held a judgment following a criminal conviction did not become final for purposes of appeal until the ministerial act of its entry had occurred.

As noted, the pre-1980 version of Rule 27.11 differentiated between the rendition of judgment and the entry of judgment by requiring the clerk to engage in the ministerial task of judgment entry *after* "a judgment upon a conviction shall be rendered in any court." Despite this fact, several cases decided before the Rules of Criminal Procedure were amended in 1980 held that the ministerial act of a clerk's entry of a written judgment of conviction was essential to triggering a criminal defendant's right to file an appeal. For example, in *State v. Skaggs*, 248 S.W.2d 635, 638 (Mo. 1952), our Supreme Court held:

We may not review the record proper in the absence of a judgment entry.

18

> It is the duty of appellant in a case such as this to furnish a full transcript of the record including the judgment and sentence. . . .
>
> It is the duty of the clerk of the trial court to enter the judgment rendered and the duty of the trial court to inspect the judgment so entered, but failure to perform these duties does not impair the validity of the judgment. Section 546.590, RSMo 1949, V.A.M.S. Thus, as in this case, where it appears . . . that defendant was sentenced but there is no record of a judgment entry, proper disposition is to set aside submission of the case here and remand it with directions to the trial court to enter judgment.

(Citations omitted.) *Skaggs* thus set aside submission of the case because it was not yet eligible for appeal given the lack of written judgment entered in the record. *See also State ex rel. Wagner v. Ruddy*, 582 S.W.2d 692, 693 (Mo. banc 1979) ("The judgment in a criminal case is final for purposes of appeal when the judgment and sentence is entered, and a notice of appeal filed in the trial court more than ten days after its entry is ineffective to vest the appellate court with jurisdiction.").

*Skaggs* and *State ex rel. Wagner* effectively ignored the distinct legal concepts of "rendition" and "entry" of judgment in criminal cases resulting in a conviction, even though section 546.590 and then Rule 27.11 plainly differentiated between the concepts. They did so, however, because the Rule addressing the right of appeal in effect at that time required courts to defer to "entry" of judgment as the trigger for the right of appeal.

Before 1980, Rule 28.03 described the defendant's right of appeal in a criminal case by express reference to the Rules of Civil Procedure:

> ***After the rendition of final judgment*** in any criminal case, the defendant shall be entitled to take an appeal as provided in these Rules. ***An appeal shall be taken by filing a notice of appeal in the same manner and within the same time after final judgment as provided for civil cases****. . . .*

19

In *State v. Wilke*, 560 S.W.2d 601 (Mo. App. 1978), the court cited *Skaggs*, and dismissed an appeal because "before appellate review can be undertaken, the judgment must be entered and made a part of the record." *Id.* at 602 (citing *Skaggs*, 248 S.W.2d at 638). Relying on the pre-1980 version of Rule 28.03, *Wilke* explained that "[a]n appeal shall be taken by filing a notice of appeal in the same manner and ***within the same time after final judgment as provided for civil cases***." *Id.* (emphasis added) (quoting Rule 28.03). Because Rule 81.05(a) provides that a judgment becomes final in civil cases at the expiration of thirty days ***after the entry of such judgment***, then

> it is the entry of the judgment by the clerk of the court of the judgment rendered by the judge that triggers the appellate process. Without entry of the judgment by the clerk there can be no final judgment from which an appeal can be taken. A notice of appeal in such instance is premature.

*Id.* Importantly, though *Wilke* reached this conclusion because compelled to do so by the incorporation of Rule 81.05 into then Rule 28.03, *Wilke* acknowledged that the terms "rendition" and "entry" of judgment possess distinct meanings otherwise respected by Missouri cases. *See id.* at 602 n.1 (holding that "Rules 27.09 and 27.11 recognize the difference between the rendition of a judgment by the trial judge and its entry by the clerk. . . . Missouri decisions and text authorities agree there is a difference.").

The holdings in *Skaggs, State ex rel. Wagner*, and *Wilke* are no longer controlling. When the Rules of Criminal Procedure were substantially amended effective January 1, 1980, all references to the Rules of Civil Procedure as determinative of when the right to appeal is triggered in a criminal case were removed. Effective January 1, 1980, Rule 30.01(a) provided:

20

> **Right to Appeal**. After the rendition of final judgment in a criminal case, the state, when authorized by Rule 30.02, and the defendant shall be entitled to appeal.

As a result, Rule 81.05 no longer controlled when a criminal defendant's right to appeal following conviction was triggered.[13] The obvious corollary is that beginning January 1, 1980, no provision in the Rules of Criminal Procedure authorized courts to disregard the commonly accepted, distinct meanings of "rendition" and "entry" of a judgment following a criminal conviction in determining when the right to appeal is triggered.

It is to be presumed that the Supreme Court removed reference to the Rules of Civil Procedure in describing when the right to appeal is triggered in a criminal case for a reason. *See, e.g.*, *State ex rel. R-1 Sch. Dist. of Putnam Cnty. v. Ewing*, 404 S.W.2d 433, 439 (Mo. App. 1966) (holding that by superseding a former court rule and substituting a new rule dealing with the same subject, "[i]t is to be presumed that the Supreme Court . . . intended to effect some change"). Though Rule 29.07(c) was newly adopted at the same time Rule 30.01(a) was adopted to replace pre-1980 Rule 28.03, the Supreme Court did not then express, and has not since expressed, an intent to equate the clerk's ministerial act of "entry" of a Rule 29.07(c) judgment of conviction (as required by section 546.590) with the trial court's judicial act of "rendering judgment" in the defendant's presence following conviction (as required by Rule 29.07(b)), though the Court plainly understands the need,

---

[13]Deletion of the cross-reference to Rule 81.05 also eliminated a criminal appellant's ability to prematurely file an appeal. *See* Rule 81.05(b).

21

and has the ability, to collapse those otherwise distinct terms if that is, in fact, its intent. *See* Rule 74.01(a).[14]

Consistent with decoupling a criminal defendant's right of appeal following the rendition of final judgment from the ministerial act of entering a Rule 29.07(c) judgment of conviction in the record, effective January 1, 1980, Rule 30.01(d) provided that assuming the timely filing of an appeal, the failure to take further steps to permit effective appellate review would not affect the validity of the appeal:

> **When and How Taken**. When an appeal is permitted by law from a trial court, a party or his agent may appeal from a judgment or order by filing with the clerk of the trial court a notice of appeal. No appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final. After a timely filing of such notice of appeal, *failure of the appellant, within the periods of time allowed or as extended by court order, to take any of the further steps to secure the review of the judgment or order appealed from does not affect the validity of the appeal, but is ground for such action as the appellate court deems appropriate, which may include the dismissal of the appeal*, unless for good cause shown, the appellate court grants still further time for taking such steps.
> . . .

(Italicized bolded emphasis added.) One of the "further steps" required of an appellant under the 1980 version of the Rules of Criminal Procedure was the submission of a legal file that included the "judgment and sentence." Rule 30.04(a). As a result, after January 1, 1980, the Rules of Criminal Procedure appear to plainly contemplate that, although a criminal defendant's appeal might be subject to dismissal for want of a written judgment

---

[14]Rule 74.01(a)'s collapsing of the distinct legal concepts of "rendition" and "entry" of a judgment was added to the Rule in 1995.

and sentence in the record, the dismissal would be on procedural, and not jurisdictional, grounds.

Today, the requirement for including a written judgment and sentence in the legal file is set forth in Rule 30.04(b). The prospect of dismissal of an appeal on procedural grounds if a criminal defendant fails to take further steps required to secure review of the judgment appealed from (including the submission of a compliant legal file) is now addressed in Rule 30.14. And although Rule 30.01(a) has been amended since 1980 to provide not only that a defendant shall be entitled to appeal "[a]fter rendition of final judgment in a criminal case," but also that "[a]ppeals shall be taken as provided in Rule 81.04[15] and Rule 81.08," the cross-referenced Rules of Civil Procedure do *not* include Rule 81.05, and thus do not link the right of appeal with the clerk's ministerial act of entering a Rule 29.07(c) judgment of conviction in the record as required by section 546.590.

**F.**

***The right of appeal for a criminal defendant under Rule 30.01(a) is triggered upon oral rendition of judgment and imposition of sentence in the defendant's presence as required by Rule 29.07(b), and a timely filed appeal after that point invokes appellate jurisdiction even if a Rule 29.07(c) judgment of conviction is not entered of record***

We conclude, therefore, that with respect to appeals filed by criminal defendants following a conviction, the "rendition of final judgment" as used in Rule 30.01(a) is not the equivalent of entry of a written Rule 29.07(c) judgment of conviction. Instead, a criminal

---

[15]Rule 81.04(a) provides that where an appeal is permitted by law, the appeal may be initiated by filing a notice of appeal with the clerk of the trial court, and that "[n]o such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment, decree, or order appealed from becomes final." Rule 81.04 does not address, however, when a judgment becomes final. Rule 81.08 addresses appeals directly to the Supreme Court and adds the requirement of provision of a jurisdictional statement.

defendant's right to appeal under Rule 30.01(a) is triggered when judgment is orally rendered and sentence is imposed in the manner required by Rule 29.07(b)(1) and (2). A criminal defendant is therefore required to file a notice of appeal in the trial court within ten days of the oral rendering of judgment and imposition of sentence.[16] Rule 30.01(a); Rule 30.03; Rule 81.04. The timely filing of a notice of appeal after the rendition of final judgment invokes our appellate jurisdiction. *State v. Romeiser*, 46 S.W.3d 656, 657 (Mo. App. W.D. 2001). After a timely appeal is filed, it is the defendant's duty to ensure that a copy of the written judgment of conviction required by Rule 29.07(c) is included in the legal file as required by Rule 30.04(b). A defendant's failure to take this "further step[] required to secure review of [his] appeal" subjects the defendant to potential dismissal of the appeal on ***procedural*** grounds pursuant to Rule 30.14, subject to such remedy as the court on appeal deems appropriate,[17] and consistent with our oft-stated "preference to

---

[16]Our conclusions today do not require us to revisit the holding in *Wynes v. State*, 628 S.W.3d 786 (Mo. App. W.D. 2021). In *Wynes*, we were asked to determine the timeliness of a post-conviction motion, not a notice of appeal, where the date of oral imposition of sentence in the presence of the defendant was two days prior to the date of judgment recorded on the Rule 29.07(c) judgment of conviction entered in the record. *Id.* at 792. The parties in *Wynes* did not challenge the inconsistency between the date of judgment recorded in the Rule 29.07(c) judgment of conviction and the date judgment was orally rendered and sentence imposed in the defendant's presence. As a result, to determine the timeliness of the post-conviction motion, we relied on the plain language of Rule 24.035 which provides that a post-conviction motion "shall be filed within 180 days of the date the ***sentence is entered if no appeal is taken***." *Id.* at 793. Given our careful analysis today about the difference between the accepted meanings of "rendition" and "entry" of a judgment, this holding in *Wynes* was correct, albeit incongruent, an observation we discuss, *infra*, in explaining our decision to transfer this case pursuant to Rule 83.02.

[17]Rule 30.14(a) contemplates that an appellate court can authorize an extension to take further steps required to secure appellate review, which would include an extension to file or supplement the legal file to include a written Rule 29.07(c) judgment of conviction, especially where the delay or inability to do so is not due to fault attributable to the defendant. Though a trial court loses jurisdiction over a case to take judicial acts after a notice of appeal is filed, the clerk and trial judge are still empowered to perform required ministerial acts, which would include the entry of a Rule 29.07(c) judgment of conviction in the record as required by section 546.590 and by Supreme Court Operating Rule 4.12(2). A defendant has the ability to seek a writ of mandamus to compel the clerk and the trial court to perform the ministerial duties required of them by Rule 29.07(c), by section 546.590 and by Supreme Court Operating Rule 4.12(2). *See State ex rel. Sasnett v. Moorhouse*, 267 S.W.3d 717, 720 (Mo. App. W.D. 2008) ("A writ of mandamus compels the performance of 'a ministerial duty that one charged with the duty has refused to perform.'") (quoting *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 725 (Mo. banc 2007)); *see also Weber*, 989 S.W.2d at 257 (holding that appellants in criminal cases would be well advised to scrutinize the legal

24

resolve an appeal on the merits of the case where possible." *State v. McKnight*, 636 S.W.3d 603, 605 (Mo. App. W.D. 2021) (quoting *State v. Cox*, 563 S.W.3d 801, 806 (Mo. App. W.D. 2018)).  However, the omission of a written Rule 29.07(c) judgment of conviction from the legal file, whether or not due to the failure of the clerk or trial court to perform the ministerial act of entering a Rule 29.07(c) judgment of conviction in the record as required,[18] does not deprive our court of appellate jurisdiction.

But for our intent to transfer this case to the Supreme Court pursuant to Rule 83.02, our conclusions would require us to hold that *Paul*, *Fisher*, *Nenninger*,[19] *Jansen*, and *Weber* should no longer be followed to the extent they stand for the following propositions:  that a Rule 29.07(c) judgment of conviction entered in the record is the same as the "rendition of final judgment" required by Rule 30.01(a); that a Rule 29.07(c) judgment of conviction must therefore be entered in the record before a criminal defendant has a right to appeal pursuant to Rule 30.01(a); and that a criminal defendant's appeal must be dismissed for

---

file requirements in Rule 30.04, as doing so would alert a defendant to the absence of a required written judgment of record).

[18]When a Rule 29.07(c) judgment of conviction is entered in the record, the filing date is not controlling with respect to the date that judgment was rendered by the trial judge.  The date that judgment was rendered, which is to be recorded in the Rule 29.07(c) judgment of conviction, should not vary from the date the trial court rendered judgment and imposed sentence in the presence of the defendant as required by Rules 29.07(b)(1) and (2).  That is because a defendant's presence at the rendition of judgment and imposition of sentence is "required by statute and rule."  *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 515 n.4 (Mo. banc 2010) (citing sections 546.550 to 546.570; Rule 29.07(b)).

[19]*Nenninger* cited favorably to *State v. Miner*, 606 S.W.2d 448 (Mo. App. S.D. 1980), and did so by assuming that *Miner* applied the 1980 Rules of Criminal Procedure, specifically Rule 29.07(c), to hold that without a copy of an entered judgment in the record, the criminal defendant's appeal had to be dismissed as prematurely filed.  *See Nenninger*, 50 S.W.3d at 369 n.2.  We are not persuaded that *Miner* was decided in reliance on Rule 29.07(c), as no Rules of Criminal Procedure are cited in *Miner*, and instead, the opinion relies on pre-1980 cases to support its holding.  However, to the extent *Miner* can be read to have applied the 1980 version of the Rules of Criminal Procedure, then it, too, should no longer be followed for the proposition that the right of appeal is triggered by the entry of a written judgment, or for the proposition that the absence of a written judgment of record deprives the court of appellate jurisdiction.

want of appellate jurisdiction if a Rule 29.07(c) judgment of conviction has not been entered in the record or is not in the legal file.[20]

We recognize that viewing the oral rendition of judgment and imposition of sentence as the "rendition of final judgment" which triggers a criminal defendant's right of appeal is incongruent with the concept of finality of a judgment for purposes of appeal in civil matters. However, that incongruity is readily explained by the differences between Rules 74.01(a) and 81.05 (applicable to civil cases), and Rules 29.07(b) and 29.11(c) (applicable to criminal cases following a conviction).

In addition, there are other logical bases for the difference. In civil cases, authorized after-trial motions are filed *after* a written Rule 74.01(a) judgment resolving all issues in a case has been entered, suspending of necessity the time for filing an appeal from the otherwise final judgment. Rule 78.04; Rule 81.05. In contrast, after-trial motions, including motions for new trial, are to be filed in criminal cases after the verdict is entered, but before sentence is imposed, and, pursuant to Rule 29.11(c), must be resolved *before* a final judgment resolving all issues has been orally rendered in the presence of the defendant pursuant to Rule 29.07(b), and *before* the ministerial act of entering a Rule 29.07(c) judgment of conviction in the record can occur. Rule 29.07(b)(1)'s insistence that "the court shall render the proper judgment and pronounce sentence thereon," but not until after-trial motions have been ruled (Rule 29.11(c)), corresponds with recognizing that the

---

[20]We do not take issue with the holdings in *Paul*, *Fisher*, *Nenninger*, *Jansen*, and *Weber* that a Rule 29.07(c) judgment of conviction is the "judgment and sentence" which must be included in the legal file pursuant to Rule 30.04(b), or that explain why documents in the record in those cases did not qualify as a Rule 29.07(c) judgment of conviction.

26

judicial act of rendering judgment against a criminal defendant is the judicial act of *oral* rendition of judgment, and not the ministerial act of entering a Rule 29.07(c) judgment of conviction that conforms with the rendered judgment as required by section 546.590.

That recognition is important. Unlike civil cases, where the written judgment controls, in criminal cases, if there is a material difference between the oral rendition of judgment and imposition of sentence and the written judgment of conviction later entered of record, the oral pronouncement controls. *Compare G.K.S. v. Staggs*, 452 S.W.3d 244, 251 n.5 (Mo. App. W.D. 2014) (holding that "the rule in criminal cases that 'oral pronouncement prevails' over the written judgment if there is material conflict in the two . . . does not apply in civil cases"), *with State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 514 (Mo. banc 2010) (holding that the written sentence and judgment of the trial court should reflect the oral pronouncement of sentence in the defendant's presence, and if a material difference exists, the oral pronouncement controls).

This difference honors the sanctity of the judicial act that constitutes the rendering of judgment. In a civil case, the judicial act of rendering a judgment does not occur until a written document, *signed by the judge*, has been entered. Rule 74.01(a). In a criminal case that results in a defendant's conviction, the judicial act of rendering a judgment occurs when judgment is orally rendered and sentence is imposed on the record, in the defendant's presence. Rule 29.07(b)(1) and (2). And although a Rule 29.07(c) judgment of conviction must be in writing, the Rule 29.07(c) judgment of conviction is *not* the judicial act of rendering judgment. In fact, a Rule 29.07(c) judgment of conviction does *not* have to be

27

signed by the trial judge.[21]  When Rule 29.07(c) was adopted effective January 1, 1980, the Committee Note explained that "[p]aragraph (c) is new.  It is the same as the first two sentences of Fed.R.Crim.P. 32(b)(1)."  Federal Rules of Criminal Procedure Rule 32(b)(1) in effect at that time included only one additional sentence, which provided that "[t]he judgment shall be signed by the judge and entered by the clerk."  The failure to include this sentence in Rule 29.07(c) at the time of its adoption was plainly purposeful, and cannot be ignored.  It is no coincidence, therefore, that Supreme Court Operating Rule 4.12(1) provides that "[j]udgments in civil cases must be signed by the judge or supported by a document with the judge's signature," and Rule 4.12(2) requires a "written record of the judgment . . . in civil and criminal cases."  But Operating Rule 4.12 does not require judgments in criminal cases to be signed by the judge.[22]  Instead, Operating Rule 4.12 also contemplates that the entry of a judgment of conviction in the record, though required, is a mere ministerial act, consistent with the fact that the terms of the Rule 29.07(c) judgment of conviction must conform with the oral judgment rendered by the trial court.  *See also* section 546.590.

---

[21]We remind that the scope of this Opinion does not extend to appealable judgments or orders entered in a criminal case that are *not* judgments of conviction, such as those entered to reflect a criminal defendant's discharge or acquittal (*see* the second sentence of Rule 29.07(c)), or that are interlocutory in nature supporting an appeal by the state pursuant to Rule 30.02.  Rule 29.07(b) has no application to these dispositions in a criminal case.

[22]Though Rule 29.07(c) judgments of conviction do not require the trial judge's signature, best practice suggests that the trial judge should affix a handwritten signature, or initials next to the typed name of the judge, to reflect that the trial judge has performed his or her ministerial duty under section 546.590 to "inspect [the clerk's entered judgments of conviction] and conform them to the facts."

***Vandergrift's appeal was timely filed, and the legal file submitted by Vandergrift includes a judgment of conviction that complies with Rule 29.07(c)***

Having concluded that a criminal defendant's right to file an appeal following conviction is triggered by the rendition of final judgment, which occurs upon the oral rendition of judgment and imposition of sentence in the defendant's presence as required by Rule 29.07(b), we necessarily conclude that Vandergrift's appeal, which was initiated by the filing of a notice of appeal in the trial court on April 14, 2021, was timely, as it was filed within ten days of the April 7, 2021 rendition of final judgment. That does not relieve of us the obligation, however, to determine whether Vandergrift's appeal is subject to *procedural* dismissal pursuant to Rule 30.14 for want of a written judgment and sentence in the legal file that complies with Rule 29.07(c).

The April 7, 2021 docket entries attached to Vandergrift's notice of appeal filed in the circuit court, and that are included in the system-generated legal file, do not qualify as the Rule 29.07(c) judgment of conviction required to be entered in the record and included in the legal file. The April 7, 2021 docket entries state:

> **Defendant Sentenced**
>
> Sentencing Assessment report received, filed and considered. The parties make argument and present evidence regarding sentences. The State asks for 15 years on Count 1, 15 years on Count 2, 15 years on Count 3, 30 years on Count 4, 30 years on Count 5 and 30 years on Count 6, all to run consecutively to each other. The defendant asks for 5 years on Count 1, 5 years on Count 2, 5 years on Count 3, 5 years on Count 4, 10 years on Count 5 and 10 years on Count 6, all to run concurrently with each other. Defendant having been convicted at a jury trial, punishment fixed at: Count 1: 15 years in DOC Count 2: 15 years in DOC Count 3: 15 years in DOC Count 4: 30 years in DOC Count 5: 30 years in DOC Count 6: 30 years in DOC

29

Allocution, Judgment and Sentence. Sentences to be served consecutively to each other, and not concurrently with each other. The total sentence, therefore is 135 years. Defendant is subject to lifetime supervision and shall be listed on the Central Registry. Sheriff authorized one deputy to deliver Defendant to Department of Corrections. Defendant given credit for any time served. Civil Judgment in accordance with law. Defendant advised on rights under Supreme Court Rule 29.15 and inquiry conducted as to assistance of counsel. Court finds no probable cause to believe Defendant has not been effectively represented by counsel. Defendant advised on right to appeal and right to appeal in forma pauperis. By statute, the defendant does not have a right to an appeal bond, and an appeal bond is not set. RJH/kb

. . .

**Sentencing Hearing Held**

State by Miller in person. Defendant in person and by Hamblin in person. The Court presides in person. The Court takes up defendant's Motion for Plain Error Review and defendant's First Amended Motion for New Trial and defendant's Motion to Renew Motion for Judgment of Acquittal. Evidence is adduced and the parties argue all three motions. The Court, having heard evidence and argument, denies all three motions under the relevant rules and legal authority and for the reasons articulated by the State. With respect to disposition, the jury returned verdicts of guilty on Counts 1 through 6 at a jury trial of this matter. RJH/kb

Though the docket entries are in writing and are in the record, they do not specify the crimes of which Vandergrift was convicted. A docket entry that does not specify the crimes of which the defendant was convicted does not comply with Rule 29.07(c)'s requirement that a judgment of conviction include "the verdict or findings." *See Nenninger*, 50 S.W.3d at 369 (concluding that a docket entry that "recite[d] a unanimous vote by a jury 'to find the defendant guilty,'" without setting forth the crime for which the defendant was convicted, did not comply with Rule 29.07(c) so that there was no final judgment from which an appeal could have been taken).

30

The April 2021 judgment form, which was attached by the circuit clerk to Vandergrift's notice of appeal submitted to this court on April 15, 2021, is not included in the system-generated legal file. The April 2021 judgment form could not have been included in the system-generated legal file because it was never entered of record in the trial court. As a result, the April 2021 judgment form does not qualify as a Rule 29.07(c) judgment of conviction entered in the record.[23]

That leaves only the December 2021 judgment form which was filed in the trial court on December 2, 2021, as reflected by a Case.net entry designated "Sentence and Judgment." December 2, 2021, is the same day that the system-generated legal file was filed by Vandergrift in this court pursuant to Rules 30.04(b) and 81.12(b)(1), suggesting that the clerk's failure to perform the ministerial duty imposed by section 546.590 to enter the judgment rendered by the trial court came to light when the legal file was being generated. Regardless the explanation for its late entry, the December 2021 judgment form is in writing, is filed of record, and includes the "plea, the verdict or findings, and the adjudication and sentence" as required by Rule 29.07(c). The December 2021 judgment form qualifies as a Rule 29.07(c) judgment of conviction entered in the record, and its inclusion in the legal file satisfies Vandergrift's obligation to include the judgment and sentence in the legal file as required by Rule 30.04(b).[24]

---

[23]It appears that Vandergrift was committed to the Department of Corrections in reliance on the April 15, 2021 judgment form, even though that form was never entered in the record. *See* Rule 29.10.

[24]Though the December 2, 2021 judgment form left blank the fields for insertion of the date judgment was rendered and the trial judge's signature, the document nonetheless qualifies as a Rule 29.07(c) judgment of conviction. The description of the charges of which Vandergrift was convicted are set forth in the body of the judgment form and reflect as to each that judgment was rendered and sentence was imposed on April 7, 2021. And, as we have already explained, a Rule 29.07(c) judgment of conviction is not required to be signed by the trial judge.

Because Vandergrift's appeal is timely, we have jurisdiction to entertain his appeal. Because the ministerial act of entering a Rule 29.07(c) judgment of conviction has been performed (albeit in a grossly delinquent manner), Vandergrift's legal filed includes a copy of the judgment and sentence as required by Rule 30.04(b). Vandergrift's appeal is thus not subject to dismissal on procedural grounds pursuant to Rule 30.14(a).

**H.**

***The importance of the issues addressed in this Opinion warrant transfer of this appeal to the Supreme Court pursuant to Rule 83.02***

Though we believe the conclusions reached today are correct and inevitably controlled by the plain wording of section 546.590, Rule 29.07(b), and Rule 30.01(a), we are sensitive that a definitive resolution of the procedural and jurisdictional issues addressed in this Opinion is essential to providing uniform guidance on when the right to appeal must be exercised following a criminal conviction. A definitive resolution by the Supreme Court will permit reasoned evaluation of conflicting Supreme Court precedent, Supreme Court guidance about possible changes to the Rules of Criminal Procedure, and certainty around which trial judge, circuit clerk, and practitioner education can be promoted.

### a. Conflicting Supreme Court precedent

In 2010, our Supreme Court stated in *State ex rel. Zinna* that a trial court retains jurisdiction to amend its oral pronouncement of sentence "if the court calls the defendant back into court, and then only to the point when the court reduces its judgment to writing." 301 S.W.3d at 515-16 n.4 (quoting *Rupert v. State*, 250 S.W.3d 442, 449 (Mo. App. E.D.

32

2008)). This summary statement, housed in a footnote, is not supported by any reference to the Rules of Criminal Procedure, but necessarily implies that judgments rendered and sentences imposed in the defendant's presence pursuant to Rule 29.07(b) are interlocutory in nature, and do not become "final" until a written Rule 29.07(c) judgment of conviction is entered of record as required by section 549.590. Taken to its logical end, the holding in *State ex rel. Zinna* could be read to mean that the "rendition of final judgment" for purposes of Rule 30.01(a) does not occur until the "entry" of a Rule 29.07(c) judgment of conviction, though the Rules of Criminal Procedure do not so state.

*State ex rel. Zinna's* suggestion that an orally rendered judgment and imposed sentence remains interlocutory is difficult to reconcile with *State ex rel. Zinna's* simultaneous recognition that the oral pronouncement of judgment in criminal cases controls over the later entered written judgment if there is a material conflict between the two. 301 S.W.3d at 514. "Because a judgment derives its force from the rendition of the court's judicial act and not from the ministerial act of its entry upon the record, an oral sentence generally controls over an inconsistent writing." *State v. McGee*, 284 S.W.3d 690, 713 (Mo. App. E.D. 2009); *see also Rupert*, 250 S.W.3d at 449 ("A judgment derives its force from the rendition of the court's judicial act, and not from the ministerial act of its entry upon the record.") (quoting *State v. Patterson*, 959 S.W.2d 940, 941 (Mo. App. E.D. 1998)); *State v. Dailey*, 53 S.W.3d 580, 584 (Mo. App. W.D. 2001) (holding that a criminal "judgment derives its force from the rendition of the court's judicial act and not from the ministerial act of its entry upon the record") (quoting *State v. Williams*, 797 S.W.2d 734, 738 (Mo. App. W.D. 1990)). If a judgment in a criminal case derives its force from the

33

rendition of the court's judicial act, and not from the ministerial act of its entry upon the record, it should follow that a trial court's oral rendition of judgment and imposition of sentence in the defendant's presence as required by Rule 29.07(b) is not interlocutory, and is instead the "rendition of final judgment" from which an immediate right of appeal lies pursuant to Rule 30.01(a). And if a judgment in a criminal case derives its force from the rendition of the court's judicial act, and not from the ministerial act of its entry upon the record, it is hard to comprehend how the clerk's ministerial act of entering a written memorialization of the trial judge's rendered judgment can have the force and effect of divesting a trial judge of jurisdiction.

We believe it is telling that in 2020, ten years after *State ex rel Zinna* was decided, the Supreme Court held in *Waters* that "[a] judgment in a criminal case is final if the judgment disposes of all disputed issues in the case and leaves nothing for future adjudication," and observed that "[m]ost often, the question of finality in a criminal case i*s determined by whether a sentence has been imposed*." 597 S.W.3d at 187 (emphasis added) (internal quotation omitted). As we have explained, a sentence is imposed in a criminal case in a defendant's presence, after the trial judge orally renders judgment. *See* Rule 29.07(b)(1), (2). *Waters*' directive that finality of a criminal judgment is generally determined by when sentence is imposed appears to be in irreconcilable conflict with *State ex rel. Zinna*'s suggestion that the oral rendition of judgment and imposition of sentence required by Rule 29.07(b) is interlocutory, and does not become final, until a clerk engages in the ministerial act of entering a Rule 29.07(c) judgment of conviction in the record.

34

This conflict can only be resolved by the Supreme Court. However, we cannot help but note that the conflict may be easily explained by *State ex rel. Zinna's* failure to take the 1980 amendments to the Rules of Criminal Procedure into consideration. *State ex rel. Zinna* quotes *Rupert*, which relied on *State ex rel. Wagner v. Ruddy*, 582 S.W.2d 692 (Mo. banc 1979), for the proposition that "[t]he court . . . exhausted its jurisdiction to amend its oral sentence with the making of a written record [of the oral judgment]." *Rupert*, 250 S.W.3d at 449. As we have already explained, the principle stated in *State ex rel. Wagner* necessarily relied on the pre-1980 version of the Rules of Criminal Procedure, and in particular then Rule 28.03, which permitted an appeal to be taken "after the rendition of final judgment," but "by filing a notice of appeal in the same manner and within the same time after final judgment as provided for civil cases." Then Rule 28.03 thus cross-referenced Rule 81.05(a), which provides that a judgment becomes final in civil cases at the expiration of thirty days *after the entry of such judgment*. In further emphasis of the belief that *State ex rel. Zinna* failed to account for the 1980 amendments to the Rules of Criminal Procedure, another case cited in *Rupert* is *State v. White*, 646 S.W.2d 804 (Mo. App. W.D. 1982). *Rupert*, 250 S.W.3d at 449. In *White*, this court held "[t]he court did not exhaust its jurisdiction until judgment and sentence had been 'entered,' and that did not occur until the making of a written record," but to do so, we relied on cases decided in 1935, 1974 and 1978, well before the Rules of Criminal Procedure were amended in 1980 to delete cross-reference to Rule 81.05(a). 646 S.W.2d at 809.

b. **The Supreme Court's authorized form for filing a criminal appeal**

Our conclusions today are not inconsistent with Rule 81.04, incorporated by reference in Rule 30.01(a), which describes what a notice of appeal "shall specify," and provides that "[f]or this purpose, the appellant shall use the relevant version of Civil Procedure Form No. 8, as the case may be." However, our conclusions today do highlight a potential issue with Form No. 8-A(3). Form No. 8-A(3) requires the date of the "judgment/sentence/order" appealed from to be noted, and a copy of the "judgment/sentence/order" to be attached. It is our view that the "judgment" which triggers the right of appeal under Rule 30.01(a) is the *oral* rendition of judgment and imposition of sentence required by Rule 29.07(b). Though a written "copy of the judgment" is to be entered in the record as required by Rule 29.07(c) and section 546.590, that ministerial act is *not* the judicial act that triggers the right of appeal under rule 30.01(a). As the facts in this case reveal, the ministerial act of entering a Rule 29.07(c) judgment of conviction is not always completed by the clerk in a prompt fashion.

A criminal defendant has a very narrow window of ten days within which to file an appeal after the rendition of final judgment. That crucial right cannot be impaired by a clerk's failure to promptly perform the ministerial act of entering a Rule 29.07(c) judgment of conviction in the record. *See* section 546.590 (providing that the clerk or trial judge's failure to perform the duties related to entering a judgment on the record after a judgment has been rendered by the trial court "shall in nowise affect or impair the validity of the judgment"). Thus, a defendant's appeal should not be subject to dismissal merely because the defendant fails, or is unable, to attach a written Rule 29.07(c) judgment of conviction

36

to Form No. 8-A(3).  The Supreme Court may deem it appropriate to revise Form No. 8-A(3), or the instructions regarding its use, accordingly.

**c.       Peculiarities in the Rules of Criminal Procedure that may warrant study**

In writing this Opinion, a number of peculiarities in the Rules of Criminal Procedure have been revealed, each of which contributes to confusion and uncertainty about when the rendition of final judgment in a criminal case occurs following a conviction.  Guidance (if any) to address these peculiarities will need to come from the Supreme Court.  The peculiarities include, but are not limited to, the following:

(i)      The Rules of Criminal Procedure use the term "judgment" in two distinct contexts.  The references to "judgment" in Rule 29.07(b) and Rule 29.11(c) refer to the oral rendition of judgment in the defendant's presence.  The references to "judgment" in Rule 29.07(c) and the legal file requirements in Rule 30.04(b) refer to a written judgment.  It is this court's view that pursuant to Rule 30.01(a), a direct appeal must be filed within ten days of the oral rendition of judgment and imposition of sentence in the defendant's presence required by Rule 29.07(b), as this is the judicial act from which any appeal lies, and as this is the judgment that controls over its written memorialization.  Regardless this court's view, however, a state of affairs that leaves courts and parties alike guessing about whether the orally rendered judgment or a later entered written memorialization of that judgment is the "final" judgment from which an appeal can be taken serves no one.  The Rules should be clarified to specify that there is only one final judgment, whether it is the oral rendition, or the written memorialization.

37

(ii)     If it is the Supreme Court's intent that the written judgment of conviction required by Rule 29.07(c) is the point at which a final judgment is rendered for purposes of triggering the right of appeal described in Rule 30.01(a), then that should be clearly expressed in the Rules of Criminal Procedure, much like Rule 74.01(a) collapses the concepts of "rendition" and "entry" of judgment in civil cases.[25]  And, should that be the direction the Supreme Court prefers, thought should be given to requiring the Rule 29.07(c) written judgment of conviction to be a judicial act, and not a mere ministerial act, by requiring the written judgment of conviction to be signed by the trial judge.  In addition, if the Supreme Court concludes that finality occurs upon entry in the record of a Rule 29.07(c) judgment of conviction, the Rules of Criminal Procedure should require that entry to occur promptly after judgment is orally rendered and sentence imposed as required by Rule 29.07(b).  Otherwise, convicted criminal defendants are left languishing in custody with no right of appeal.

(iii)     Rule 29.10 requires "the clerk of the court [to] deliver to the sheriff of the county a certified copy of the judgment and sentence," in reliance upon which "the sheriff shall confine the defendant in jail or deliver the defendant to the Division of Corrections

---

[25]This Opinion should not be read to encourage making the Rule 29.07(c) judgment of conviction the trigger for the right of appeal pursuant to Rule 30.01(a).  There are good reasons not to do so, including the certainty afforded to criminal defendants and their counsel in knowing when the short time to file an appeal must be exercised if calculated from the oral rendition of judgment and imposition of sentence in the defendant's presence.  In addition, no hardship is imposed if entry of a Rule 29.07(c) judgment of conviction continues to be viewed as a ministerial act, and not the "judicial act" of rendering judgment.  Delay between the oral rendition of judgment which triggers the right of appeal, and the later entry of a written judgment of conviction, permits the practicality of time for trial judges to review the judgment form prepared by a court clerk before it is entered.  And, since the orally rendered judgment controls over the written in a criminal case, delay in entering the written judgment of conviction is not substantively impactful, so long as there is certainty in the law that the oral rendition of judgment and imposition of sentence is the trigger for exercising the right of appeal, and that the lack of a written judgment in the record is not jurisdictional.

as specified in the order." Confinement in accordance with an imposed sentence cannot be effectuated without this paperwork. However, Rule 29.10 does not require the certified copy of the "judgment and sentence" to be the Rule 29.07(c) judgment of conviction, nor to even be entered of record. The facts in this case demonstrate how problematic that can be, as Vandergrift was apparently committed to the custody of the Department of Corrections with the April 2021 judgment form, (the form attached by the circuit clerk to Vandergrift's notice of appeal submitted to this court on April 15, 2021), though that form was never entered of record, and does not qualify as a Rule 29.07(c) judgment of conviction as a result. It has come to this court's attention that this is not an uncommon practice in the State of Missouri, and that certified, but unfiled "judgment forms" are being used by circuit clerks as commitment orders for purposes of Rule 29.10. If criminal defendants are not permitted to appeal immediately upon oral rendition of judgment and imposition of sentence, and must instead await the ministerial act of entry in the record of a Rule 29.07(c) judgment of conviction, it is possible that criminal defendants could be serving imposed sentences based on certified but unfiled "judgment forms" before they have a procedural right to appeal their conviction and sentence.

(iv)    Rule 29.13(a) refers to the "entry" of judgment in connection with a trial court's authority to set aside a judgment. This Rule is nearly impossible to reconcile with Rule 29.11, and in any event creates confusion by using the term "entry" instead of "rendition." This Rule may be an overlooked vestige of the pre-1980 version of the Rules of Criminal Procedure, where the right of appeal was tied to "entry" of judgment because of the cross-reference to civil Rule 81.05, and given the Rule's reference to the "filing of a

39

transcript of the record in the appellate court," a phrase otherwise removed from the Rules of Criminal Procedure by the 1980 amendments.

(v)     Rule 29.13(b) is similarly problematic, as it uses the phrase "entry of judgment and imposition of sentence" in a context that appears plainly intended to refer to the rendition of judgment and imposition of sentence required by Rule 29.07(b).  Given that apparent intent, use of the term "entry" instead of "rendition" is confusing.

(vi)     As this court noted in *Wynes v. State*, 628 S.W.3d 786, 792-93 (Mo. App. W.D. 2021), Rules 24.035 and 29.15 key the date for filing a post-conviction motion to the date that a sentence is "entered."  Though not technically in conflict with the time for filing a direct appeal pursuant to Rule 30.01(a), which keys the date for filing an appeal to the date of "rendition of final judgment," a reasoned basis for the difference is not readily discernible.

(vii)     Rule 81.05(b) contemplates the premature filing of appeals in civil cases. This Rule was incorporated into the Rules of Criminal Procedure prior to the 1980 amendments by virtue of then Rule 28.03's cross-reference to the Rules of Civil Procedure for purposes of calculating the time and manner within which to take a criminal appeal. After the 1980 amendments removed cross-reference to Rule 81.05, there is no longer a right to file a premature appeal in criminal cases.  A reasoned basis for differentiating between criminal and civil appellants in this regard is not readily discernible.

For the reasons herein described, rather than finally disposing of Vandergrift's appeal, we transfer this appeal to the Missouri Supreme Court on our own motion pursuant to Rule 83.02 to address when the "rendition of final judgment" referred to in Rule 30.01(a)

40

occurs in a criminal case as to trigger the right of appeal, and to address whether the entry of a Rule 29.07(c) judgment of conviction is required to invoke appellate jurisdiction.

Our transfer of this case is unrelated to the merits of the substantive issues raised by Vandergrift in his points on appeal. We nonetheless believe it appropriate to analyze the merits of Vandergrift's points on appeal in potential aid to the Supreme Court on transfer.

## III.

### Factual History Relevant to Vandergrift's Points on Appeal

Vandergrift does not challenge the sufficiency of the evidence to support his convictions of three counts of child molestation in the first degree and three counts of statutory sodomy in the first degree. Viewed in the light most favorable to the jury's verdicts,[26] the evidence established the following:

A.V. ("Victim"), born in March 2005, grew up in a home in New Bloomfield, Missouri with her mother ("Mother"), Vandergrift, and her three siblings. Victim believed that Vandergrift was her biological father, but later discovered that Vandergrift was her stepfather and that her siblings were her half-siblings.[27] Victim testified at trial that, from the age of four or five until she turned fourteen years old in March 2019, Vandergrift "molested [her]." Victim described particular instances of Vandergrift placing his fingers in her vagina, touching her breasts, and placing his penis in her mouth.

---

[26]"We view the evidence in the light most favorable to the jury's verdict, disregarding all contrary evidence and inferences." *State v. Ratliff*, 622 S.W.3d 736, 739 (Mo. App. W.D. 2021).

[27]For the sake of ease, we refer to Victim's siblings throughout the opinion without the "half" modifier.

41

In addition to Victim's recitation of the sexual abuse she endured by Vandergrift, Mother testified that, when Victim was approximately four years old, Victim "play[ed] with her vagina" while in a restroom. Mother instructed Victim to stop and said, "We don't touch our girl parts." Victim then told Mother, "Daddy does it." Mother did not report this incident to law enforcement or to the Children's Division as suspected abuse. Other than this statement to Mother, Victim never told anyone about the sexual abuse until March 2019 because she was afraid that Vandergrift would hurt her.

In March 2019, Victim's younger sister was approximately the same age that Victim was when Vandergrift began sexually abusing her, and Victim became worried that Vandergrift would similarly abuse her sister. After her fourteenth birthday, Victim told her then-best friend, then-boyfriend, and two other friends about Vandergrift's sexual abuse. Her friends and boyfriend told Victim that she needed to tell an adult what was happening to her. Victim decided to tell her former school guidance counselor, Siobhanna Mayotte ("Mayotte"), about the abuse.

Right before her school's spring break in March 2019, Victim placed a handwritten note in a locked mailbox outside of Mayotte's classroom. The note indicated that Victim needed to speak to Moyette "about something that's really important." When she received the note, Mayotte attempted to speak with Victim, but Victim brushed off Mayotte, saying that she did not have time. Mayotte knew, however, that Victim was spending spring break with a friend, so Mayotte contacted the friend's mother and was able to speak on the telephone with Victim. Victim told Mayotte that she was safe and that she would speak with Mayotte when they returned to school after spring break.

On Monday, April 1, 2019, Victim went to Mayotte's office, and while sobbing, told Mayotte that Vandergrift had been sexually abusing her. Mayotte called the Children's Division abuse hotline. Mother, who worked at the school as a paraprofessional, came to Mayotte's classroom. Victim attempted to tell Mother about the sexual abuse by Vandergrift, but she was unable to speak. At Victim's request, Mayotte relayed to Mother what Victim had said earlier that morning about the abuse.

Dr. Holly Monroe ("Dr. Monroe"), a physician specializing in child abuse pediatrics, performed Victim's sexual assault forensic examination ("SAFE") on April 9, 2019. Dr. Monroe performed a second SAFE on Victim the next month with the assistance of a pediatric resident and a nurse. The examinations revealed that Victim experience a "complete transection of the hymen at 5 o'clock," an injury that could only exist as a result of penetration of Victim's vagina. Dr. Monroe opined that Victim's injury was consistent with Victim's disclosure of sexual abuse.

On February 3, 2021, the jury returned its verdicts finding Vandergrift guilty on all six counts. The trial court granted additional time for post-trial motions at Vandergrift's request. Vandergrift filed a motion for new trial ("Motion for New Trial") on February 15, 2021. The Motion for New Trial asserted in part that the trial court committed plain error in allowing Mayotte to testify that it is common for child victims of sexual abuse, child molestation, and sexual touch to delay disclosing these acts. Then on March 24, 2021, Vandergrift filed a first amended motion for new trial ("Amended Motion for New Trial"). The Amended Motion for New Trial argued that there was newly discovered evidence that Victim had sexual intercourse with her boyfriend after she disclosed the sexual abuse but

43

before Dr. Monroe performed the SAFE, which provided an alternative explanation for the injury to Victim's hymen. On March 31, 2021, Vandergrift filed a motion for plain error review ("Motion for Plain Error Review") pursuant to Rule 29.12(b). The Motion for Plain Error Review presented the same argument about newly discovered evidence raised in the Amended Motion for New Trial.

The trial court held a hearing on Vandergrift's post-trial motions on April 7, 2021. The State indicated that it was not objecting to the timeliness of any of Vandergrift's post-trial motions. Victim's older brother testified at the hearing that, after the jury found Vandergrift guilty as charged, he arranged to meet with Victim's former boyfriend in a park. Victim's older brother wanted to ask Victim's former boyfriend whether he had sexual intercourse with Victim after she told Mayotte about the abuse but before Dr. Monroe performed the SAFE. According to Victim's older brother, Victim's former boyfriend admitted that he had sexual intercourse with Victim during that time period. However, after the meeting in the park, Victim's older brother realized that his phone was not recording during the conversation with Victim's former boyfriend. Approximately two and a half weeks later, Victim's older brother sent the former boyfriend the following text message: "If u and [Victim] had sex Bc I didn't know if I miss unstood u at the park Bc mom gave me a different answer." Two days later, Victim's former boyfriend answered, "Ye bro we fucked but not till after she told me bout everything."

In addition to testimony from Victim's older brother, the trial court also considered affidavits from Victim and her former boyfriend. Victim's affidavit indicated that, during a pretrial deposition on December 20, 2019, she told the truth when answering "no" to

44

whether she had ever had sexual intercourse with her former boyfriend. Victim's former boyfriend's affidavit stated that he did not lie during a pretrial deposition on December 20, 2019, when he answered that he had never penetrated Victim's vagina. Victim's former boyfriend also indicated in his affidavit that he did not tell Victim's older brother that he had sexual intercourse after Victim disclosed the sexual abuse but before the SAFE was performed. Victim's former boyfriend said that he told Victim's older brother that he had sexual intercourse with Victim but that did not occur until after his December 20, 2019 deposition.

After a recess, the trial court denied Vandergrift's Amended Motion for New Trial and Motion for Plain Error Review. The trial court then proceeded to final disposition of the case, as is outlined *supra*.

Vandergrift appeals.

## IV.

## Analysis of Points on Appeal

Vandergrift presents two points on appeal. Vandergrift's first point relied on asserts that the trial court abused its discretion in denying the Amended Motion for New Trial because newly discovered evidence--that Victim and her former boyfriend had sexual intercourse after Victim's disclosure to Moyette but before the SAFE was performed--was so material that, if heard by the jury, it would have likely produced a different result. Vandergrift's second point relied on asserts that the trial court committed plain error in

failing to *sua sponte* strike Mayotte's testimony about delayed reporting of sexual abuse because it was unqualified expert testimony under section 490.065.2.[28]

**A.**

*Point One: Newly Discovered Evidence*

Vandergrift's first point on appeal challenges the denial of his Amended Motion for New Trial. Before addressing the merits of this contention, we must first address whether the Amended Motion for New Trial was authorized by the Rules of Criminal Procedure.

Rule 29.11(b) provides that "[a] motion for new trial . . . shall be filed within fifteen days after the return of the verdict," unless the defendant requests, within the same time frame, an extension of time to file the motion. If a timely request for extension is made, the trial court may grant an extension not to exceed ten additional days. Rule 29.11(b). Thus, a motion for new trial can be permissibly filed no more than twenty-five days after the jury's return of its verdict. *State v. Savage*, 609 S.W.3d 71, 80 (Mo. App. W.D. 2020). "Rule 29.11(b) applies to requests for new trials based upon newly discovered evidence." *State v. Shelton*, 529 S.W.3d 853, 866 (Mo. App. E.D. 2017).

The time limitations set forth in Rule 29.11(b) are mandatory.[29] *State v. Vickers*, 560 S.W.3d 3, 23 (Mo. App. W.D. 2018). The rule "does not make an exception extending the time to file a motion, even where the newly discovered evidence on which the motion for a new trial is predicated is not discovered until after the filing deadline has passed." *Id.*

---

[28]All references to section 490.065 are to RSMo 2016, as supplemented through the date of Mayotte's testimony, February 2, 2021.

[29]It is thus irrelevant that the State expressed no objection to the timeliness of the Amended Motion for New Trial.

(quoting *Shelton*, 529 S.W.3d at 866).  Because there is no exception to the mandatory time period, an amended motion for new trial that is filed after the expiration of the time period "is not an appropriate means to introduce new evidence, preserves nothing for appeal, and is a procedural nullity."  *Id.* (quoting *Shelton*, 529 S.W.3d at 866-67).

Because the jury returned its verdict on February 3, 2021, the initial fifteen-day period for filing a motion for new trial would have ended February 18, 2021, had the trial court not granted Vandergrift an extension for filing post-trial motions.  Because an extension was timely requested and granted, the deadline for filing a motion for new trial was February 28, 2021.  Vandergrift's Motion for New Trial was timely filed on February 15, 2021.  But Vandergrift did not assert his claim of newly discovered evidence until he filed the Amended Motion for New Trial on March 24, 2021.  The Amended Motion for New Trial was untimely and was a procedural nullity that preserves nothing for our review.

Perhaps recognizing this fact, Vandergrift also filed a Motion for Plain Error Review in the trial court, raising the same argument about newly discovered evidence raised in the Amended Motion for New Trial.  However, Vandergrift's point on appeal does not challenge the trial court's denial of the Motion for Plain Error Review.  We question, therefore, whether there is any claim of error associated with failing to grant a new trial based on newly discovered evidence that is preserved for our review.  *See State v. Lucas*, 452 S.W.3d 641, 643 n.3 (Mo. App. W.D. 2014) ("Issues not raised on appeal are considered waived.") (quoting *Brunig v. Humburg*, 957 S.W.2d 345, 347 n.2 (Mo. App. E.D. 1997)).

We nonetheless elect *ex gratia* to abide by our customary practice to evaluate claims of newly discovered evidence raised on appeal to determine whether the claim rises to the level of "extraordinary circumstances . . . that justify remand and establish that manifest injustice or miscarriage of justice occurred." *See Vickers*, 560 S.W.3d at 23-24. "[A]n appellate court has the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence presented for the first time on appeal," and may exercise this power within its discretion. *Savage*, 609 S.W.3d at 80 (quoting *State v. Terry*, 304 S.W.3d 105, 108-09 (Mo. banc 2010)).

While Rule 29.11(a) allows the trial court to grant a new trial "upon good cause shown," "new trials based on newly discovered evidence are disfavored." *Shelton*, 529 S.W.3d at 867 (quoting *State v. Williams*, 405 S.W.3d 194, 197 (Mo. App. W.D. 2016)). To establish a right to a new trial on the basis of newly discovered evidence, a defendant must establish:

> 1. The facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial;
>
> 2. Movant's lack of prior knowledge is not owing to any want of due diligence on his part;
>
> 3. The evidence is so material that it is likely to produce a difference result at a new trial; and
>
> 4. The evidence is neither cumulative only nor merely of an impeaching nature.

*Terry*, 304 S.W.3d at 109 (quoting *State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997), *mandate recalled on another basis in State v. Whitfield*, 107 S.W.3d 253 (Mo. banc

48

2003)). The trial court, after hearing evidence regarding Vandergrift's request for a new trial on the basis of newly discovered evidence, denied the claim. We agree with the trial court's decision.

Vandergrift contends that evidence that Victim and her former boyfriend had sexual intercourse after her disclosure of abuse to Mayotte but before the first SAFE was performed would have bolstered Vandergrift's ability to argue that the injury to Victim's hymen was the result of sexual activity with her former boyfriend. Vandergrift also contends that, had defense counsel known that Victim had sexual intercourse with her former boyfriend, defense counsel would have been able to challenge Victim's credibility on that subject at trial. Relying on *Terry*, Vandergrift argues that when newly discovered evidence demonstrates the victim lied about material facts and impeaches the victim's testimony, a new trial is warranted, regardless of the untimeliness of the motion for new trial.

In *Terry*, the victim of statutory rape testified that the defendant was the only person she had sexual intercourse with during the relevant time period during which she conceived a pregnancy. *Id.* at 107. Between the jury's verdict and sentencing, however, the victim gave birth, and DNA testing of the child revealed a zero-percent chance that the defendant was the child's biological father. *Id.* at 108. The defendant filed an untimely motion for new trial. *Id.* The Supreme Court concluded that the motion for new trial appeared to satisfy each of the four requirements to obtain a new trial on the basis of newly discovered evidence. *Id.* at 109. With respect to the third and the fourth elements, the Court held:

49

The third element is satisfied because, as discussed below, the new evidence casts serious doubt on Terry's conviction and is material to proving the key element of the crime of statutory rape, that Terry and A.W. had sex because the victim was pregnant and testified that she had sex only with Terry. The fourth element also is satisfied. Although the DNA evidence would impeach A.W.'s testimony, it does not "merely" impeach--it conclusively shows that she perjured herself. Generally, the jury decides the effect of impeachment evidence in making its factual conclusions and, even with impeachment evidence, still may choose to believe the witness. But here, the jury has nothing to weigh because, if verified, the DNA test proves that A.W. committed perjury as to a material part of her testimony.

*Id.*

The newly discovered evidence in this case is not akin to the newly discovered evidence in *Terry*. First, though Vandergrift claims the newly discovered evidence establishes that Victim and her former boyfriend had sexual intercourse before Victim's SAFE, Victim's former boyfriend's text to Victim's older brother was ambiguous at best about the time during which he claims to have had had sexual intercourse with Victim. And Victim's boyfriend's affidavit, which was admitted at the hearing, indicated that he did not have sexual intercourse with Victim before his December 20, 2019 deposition. Though Victim's older brother claimed the former boyfriend told him otherwise during the meeting in the park, the jury would have remained free to determine whether to believe Victim's former boyfriend or Victim's older brother.

And, though Victim testified that between the time she was four years old and thirteen years old in 2018, she was not sexually active with anyone other than Vandergrift, and explicitly testified that she never had sexual intercourse with her former boyfriend, the newly discovered evidence at most impeached Victim, but not as to a factual matter that was essential to support Vandergrift's conviction given ambiguity about when the sexual

50

intercourse with the former boyfriend took place. Had the newly admitted evidence been introduced at trial, the jury would be have remained free to determine whether to believe Victim or Victim's former boyfriend on the issue of whether they ever had sexual intercourse, and even then could have concluded that if intercourse occurred, it was not until after the SAFE.

We are not persuaded, therefore, that the newly discovered evidence satisfies either the third or the fourth *Terry* requirements. The newly discovered evidence does not constitute an "extraordinary circumstance[]" that would require us to remand to avoid manifest injustice or a miscarriage of justice. *Vickers*, 560 S.W.3d at 23-24.

Point One is denied.

**B.**

*Point Two: Mayotte's Testimony About Delayed Disclosure*

Vandergrift's second point on appeal contends that Mayotte's testimony about delayed disclosure of acts of sexual abuse, child molestation, and sexual touching was unqualified expert testimony. While Vandergrift included this allegation of error in his Motion for New Trial, "[a] timely and specific objection to [the] challenged testimony at trial [was] necessary to preserve the issue for appellate review." *State v. West*, 551 S.W.3d 506, 515 (Mo. App. E.D. 2018). Because Vandergrift did not preserve this claim of error by timely and specific objection at trial, he asks us to exercise our discretion under Rule 30.20 to conclude that the trial court plainly erred in failing to *sua sponte* strike Mayotte's testimony about delayed disclosure.

51

Rule 30.20 grants us discretion to consider "plain errors affecting substantial rights [if we] find[] that manifest injustice or miscarriage of has resulted therefrom." Plain error review is a two-step process. *State v. Putfark*, 651 S.W.3d 869, 880 (Mo. App. W.D. 2022). The first step requires us to determine whether plain error has occurred. *Id.* An error is plain if it is "evident, obvious, and clear." *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999)). If the alleged error is plain, we move to the second step: ascertaining whether "the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.* (quoting *Scurlock*, 998 S.W.2d at 586).

During trial, the State asked Mayotte on redirect examination to explain what the term "delayed disclosure" means. Mayotte answered, "[t]hat a child withholds their disclosure of abuse or neglect for a significant period of time." The State then asked Mayotte whether, during her coursework for two master's programs or her training as a child abuse and neglect investigator for the Children's Division, she had received specific training in regard to delayed disclosure and signals of abuse. Mayotte testified that she had. The State then asked, "when it comes to delayed disclosure, based on your experience and training, would you say that it is more common or more uncommon for a child to wait to tell--or for anyone, an adult, to tell someone about their abuse?" Mayotte testified that it was more common "[b]y quite a bit." Vandergrift's counsel did not object and did not conduct re-cross examination of Mayotte. Nonetheless, Vandergrift asserted in his Motion for New Trial, and now asserts on appeal, that Mayotte's testimony was inadmissible expert witness testimony pursuant to section 490.065.2 because an inadequate foundation was laid to establish Mayotte's expertise on the subject of delayed disclosure.

52

Section 490.065 addresses the admission of expert testimony in Missouri courts. Subsection 2 is applicable to the prosecution of a defendant for child molestation in the first degree and statutory sodomy in the first degree. Section 490.065.2 provides, in relevant part:

> (1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case;
>
> . . . .
>
> (4) Unless the court orders otherwise, an expert may state an opinion and give the reasons for it without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

Our Supreme Court recently considered whether section 490.065.2 permits a person with education and training regarding child sexual abuse and experience working with victims of such abuse to testify about delayed disclosure in *State v. Minor*, 648 S.W.3d 721 (Mo. banc 2022).

In *Minor*, the Court considered whether the trial court abused its discretion in admitting expert testimony by a Child Protection Center ("CPC") forensic interviewer regarding delayed disclosure by child victims of sexual abuse. *Id.* at 733. The defendant claimed that the CPC forensic interviewer did not meet the criteria set forth in section

53

490.065 to be qualified as an expert, and challenged the foundation for her opinion. *Id.* at 733, 734. The Court rejected both arguments. First, it concluded that the CPC forensic interviewer was qualified as an expert witness based on her education, experience, and training. *Id.* at 733-34. Second, the Court recognized that "[w]hen a witness provides non-scientific, generalized testimony, based upon expert specialized knowledge, a different reliability analysis is appropriate," so that "'[a]s long as an expert's testimony rests upon good grounds, based on what is known[,] it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset.'" *Id.* at 734 (quoting *State v. Marshall*, 596 S.W.3d 156, 161 (Mo. App. W.D. 2020). The Court then recognized that "[a]ppellate courts repeatedly have found evidence regarding delayed-disclosure evidence is relevant and admissible in child sexual abuse cases" so that the trial court did not abuse its discretion in allowing the CPC forensic interviewer to provide "generalized testimony concerning children's disclosure of sexual abuse based upon her extensive experience and training." *Id.* at 735.

The circumstances surrounding Mayotte's testimony are nearly identical to those in *Minor*. Mayotte established that she had training regarding delayed disclosure by child victims of sexual abuse through her coursework for the master's degree she had already been awarded and the master's degree in progress, through her training and experience as a child abuse and neglect investigator for the Children's Division for eight years, and through her seven years as a school counselor. Based on that education and experience, Mayotte gave "non-scientific, generalized testimony" about delayed disclosure by child victims of sexual abuse. If the trial court did not abuse its discretion in allowing such

54

evidence over timely objection in *Minor*, then the trial court did not commit plain error in failing to *sua sponte* exclude Mayotte's testimony here.

Point Two is denied.

## Conclusion

For the reasons explained in this Opinion, we would be inclined to affirm the trial court's Judgment on the merits, and in the process, to find that we have jurisdiction to hear Vandergrift's appeal because it was timely filed within ten days of the oral rendition of judgment and imposition of sentence, even though a written judgment of conviction was not entered in the record until nearly eight months later. However, given the general interest and importance of the procedural, and potentially jurisdictional, questions presented in this case, we do not finally decide Vandergrift's appeal, but instead transfer his appeal to the Missouri Supreme Court pursuant to Rule 83.02.

_____
Cynthia L. Martin, Judge

All concur